680 P.2d 146

### In the Matter of the APPEAL IN YAVAPAI COUNTY JUVENILE ACTION NO. J–8545.

#### No. 17328–PR.

Supreme Court of Arizona, In Banc.

March 27, 1984.

---

**12**

Lewis & Morales by M. Wayne Lewis, Chandler, for appellants.

H.K. Wilhelmsen, Prescott, for appellee.

GORDON, Vice Chief Justice:

The preliminary issue before this Court is whether an order of the juvenile court dismissing a dependency proceeding is a final and appealable order within the meaning of Ariz.R.P.Juv.Ct. 24(a). We find that it is. The Court of Appeals' order dismissing appellants' appeal from dismissal of a dependency proceeding for lack of jurisdiction is vacated.

A review of the pertinent history of this appeal is necessary here. On January 5, 1981, in the presence of his two children, Derek S. Grilz, then aged four, and Margaux A. Grilz, then aged one, Gordon L. Grilz shot and killed his wife, and the mother of his children, Linda Marie Grilz. Following the filing of criminal charges against him, the Arizona Department of Economic Security ("DES") filed a petition in the Juvenile Court of Yavapai County, Arizona to declare Derek and Margaux de-pendent minor children. On January 26, 1981, following a hearing on that petition, the court found the children to be dependent wards of the Yavapai County Juvenile Court. The court ordered continuation of custody with the DES pending a hearing on placement and ordered that home studies be done of the parties interested in custody of the children.

A placement hearing was held on March 31, 1981. All interested parties, except the children, were represented by counsel. On April 16, 1981, the court entered an order granting temporary custody to Mrs. Cavelaris, the maternal grandmother who resided in California, and rights of visitation to appellants, Mr. and Mrs. Collins, a paternal aunt and uncle.

On March 1, 1982, approximately two months prior to a scheduled judicial review of the placement, Mr. Grilz and the Collinses moved the court to appoint counsel for the children. They argued that appointment of counsel was mandated by A.R.S. § 8–225(E) because the prospective custodians, Mrs. Cavelaris and the Collinses, would each be pursuing their individual interests at the proceedings and not necessarily the best interests of the children. This motion was denied on March 31, 1982, on the ground that the

> "logistics of appointing counsel for the children who are located in California would be non-productive for the Foster Care Review Board Hearing and the Judicial Review Hearing [set for May 3, 1982]. The Court will reconsider the motion, if renewed, at the Judicial Review Hearing."

On April 1, 1982 the hearing was continued until August 24, 1982 pursuant to the Collinses' motion for a change of custody and a request for home study.

On June 9, 1982, Mrs. Cavelaris filed a motion to be appointed guardian or, in the alternative, to be authorized to initiate guardianship proceedings in California. This motion was opposed by the Collinses and by Mr. Grilz.

At the judicial review hearing on August 24, 1982, the court heard argument on Mrs. Cavelaris' motion for guardianship and the Collinses' motion for change of custody. At that time Mr. Grilz' counsel renewed his request for appointment of counsel for the children. The court promptly denied the request. On October 1, 1982, the court denied the Collinses' motion requesting change in custody and granted Mrs. Cavelaris' motion to be permitted to bring guardianship proceedings in California. The order stated that "[u]pon completion [of the guardianship proceeding in California] this Dependency Petition will be dismissed. At that point, the DES will also be relieved from any responsibility." On October 15, 1982, the Collinses filed an appeal from that order.

On January 11, 1983, Mrs. Cavelaris was made guardian in San Diego County, California. On January 31, 1983, she moved for termination of the dependency proceedings in Yavapai County. On February 4, 1983, the Collinses' appeal of the October 1, 1982 order was dismissed on the grounds that the order was not final and appealable. On April 25, 1983, the dependency proceedings were dismissed.

On December 30, 1983 the Collinses' timely appeal of the dismissal of the dependency proceedings was dismissed by the Court of Appeals for lack of jurisdiction. The Collinses petitioned this Court for re-view. We have jurisdiction to review the Court of Appeals' order pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.P.Juv.Ct. 28.

## I. APPEALABILITY OF DISMISSAL OF THE DEPENDENCY PROCEEDINGS IN YAVAPAI COUNTY

The Court of Appeals dismissed the Collinses' appeal of the juvenile court's order dismissing the dependency proceeding on the ground that it lacked jurisdiction to consider the appeal. The Court of Appeals said:

"The trial court's final order, which was subject to appeal, was its January 26, 1981 order finding the children dependent and placing custody with the Arizona Department of Economic Security. No appeal was taken from this order and the subsequent orders were special orders entered after final judgment which are not subject to review by appeal. *See In The Matter of the Appeal in Pima County Juvenile Action No. J–35316*, 24 Ariz.App. 384, 539 P.2d 188 (1975)."

■ Ariz.R.P.Juv.Ct. 24(a) provides that "[a]ny aggrieved party may appeal from a final order of the juvenile court to the Court of Appeals." What constitutes a final order in dependency proceedings is a question of first impression in this state.[1] We find that the juvenile court's order dismissing the dependency proceeding in Ya-

---

1. We have, however, defined "final order" before. In *In re Appeal in Pima County Juvenile Action No. S–933*, 135 Ariz. 278, 660 P.2d 1205 (1982) we had to determine which of two orders (one stating the trial court's finding that termination of parental rights was warranted; the second stating the findings which prompted that conclusion) was a final order before we could determine whether the Court of Appeals' dismissal of petitioner's appeal as untimely was proper. We stated that petitioner's right to appeal existed only from a "final order," and that a final order was one "which ends the proceedings, leaving no question open for further judicial action," *id.* at 280, 660 P.2d at 1207. This definition was based on *Eaton v. Unified School District No. 1 of Pima County*, 122 Ariz. 391, 595 P.2d 183 (App.1979), *opinion approved and adopted*, 122 Ariz. 377, 595 P.2d 169 (1979), which involved a request for review of an order permitting a class action pursuant to A.R.S.

§ 12–2101 defining the Court of Appeals' general appellate jurisdiction; it did not involve a juvenile matter. We drew from *Eaton* because no courts of our state had defined "final order" within the scope of the Ariz.R.P.Juv.Ct. and A.R.S. § 8–236(A). We then held that the second order was the final order because it, rather than its predecessor, complied with the rule and statute concerned with orders terminating parental rights. *Though we do not question our holding in Juvenile Action No. S–933*, we wish to make clear that the definition of "final order" provided therein does not apply to orders entered in dependency proceedings. The Ariz.R.P. Juv.Ct. are a self-contained enactment designed to deal with a unique subject matter. In determining whether an order is final under these rules, we are not bound by the definition employed in determining if an order is final for the purposes of exercising general appellate jurisdiction.

**14**

vapai County was a final order. Though the facts of *In re Appeal in Pima County, Juvenile Action No. J-35316*, 24 Ariz.App. 384, 539 P.2d 188 (1975), relied upon by the Court of Appeals, make it distinguishable from the instant case [2] we find it necessary to examine and overrule *Juvenile Action No. J-35316* to prevent further reliance on it.

■■ *Juvenile Action No. J-35316* involved appeal of a juvenile court order of January 10, 1975. That order affirmed an order of February 28, 1973 declaring appellant's minor children dependent and granting their custody to the DES and physical care to a married stepsister. Appellant, the children's natural mother, had sought to regain parental control. The trial court denied her request and she sought review in the Court of Appeals. The Court of Appeals held that she lacked the right to appeal because the January order was a special order entered after judgment rather than a final order. It said the only final order was the order of February 28, 1973, presumably because that order first established the arrangement at issue. In treating the February 1973 order as the only final, and therefore appealable, order, the Court of Appeals applied a very narrow, technical conception of what constitutes a final order. We find that conception inappropriate in cases involving the important and fundamental right to raise one's children. *Juvenile Action No. S-933, supra; In re Appeal in Pima County, Juvenile Action No. S-111*, 25 Ariz.App. 380, 543 P.2d 809 (1975), *review denied*, 113 Ariz. 247, 550 P.2d 625 (1976). From a practical perspective, each periodic review of a dependency determination is a new determination of whether or not a child is dependent. Therefore, orders declaring children dependent and orders reaffirming findings that children are dependent are final orders subject to appeal by aggrieved parties. A parent denied and redenied control over his or her children must have the right to appeal the initial and subsequent denials. This does not mean that he or she shall be able to challenge a custodial arrangement every week or every month. What it means is that an aggrieved party may appeal an order issued pursuant to the juvenile court's periodic review of a determination of dependency or of a custodial arrangement, *see* A.R.S. § 8–515(C), (D). Though this may impose an additional burden on our Court of Appeals, it is a burden the Court of Appeals must bear in light of the fundamental right at stake. Because the Court of Appeals failed to recognize this in *Juvenile Action No. J-35316*, it is overruled.

■ In the instant case, the Court of Appeals once again assumed that dependency proceedings can have one and only one "final" order and that the January 26, 1981 order declaring the Grilz children dependent pursuant to A.R.S. § 8–201(11) was *the* final order. We have no doubt that the January 26 order was final. *See In re Appeal in Pima County, Juvenile Action No. J-46735 v. Howard*, 112 Ariz. 170, 540 P.2d 642 (1975). This is true notwithstanding the fact that a determination of dependency does not dispose of all matters correlative to that determination, such as assignment of legal custody. *See* Ariz. R.P.Juv.Ct. 16(e) [3] and A.R.S. § 8–241(A)(1).[4] A finding of dependency disposes of the issue of whether a child is dependent and simultaneously triggers a custody proceeding. It is, therefore, only the first step in an effort to provide for minor children who are not being adequately cared for. Whether determination of dependency and the concommitant award of custody are considered two separate actions—a dependency proceeding to deter-

---

2. *Juvenile Action No. J-35316* involved an order following periodic review of a determination of dependency and not an order dismissing a dependency action in toto.

3. Ariz.R.P.Juv.Ct. 16(e) provides, in part, that "If the court finds that the allegations [of depend-

ency] are sustained by the evidence, the court may proceed with the disposition of the case."

4. A.R.S. § 8–241(A)(1) authorizes the juvenile court to make one of several specific awards of custody of a child adjudicated dependent.

mine if a child is dependent, and a custody proceeding triggered thereby—or two parts of a single action is unimportant. We will not spend our time making technical distinctions. What is important is the practical reality that an order declaring a child dependent affects a fundamental right and an order dismissing a pending award of child custody precludes further action in the dismissing court such that the party is effectively put out of court. An order that disposes of an issue such that it conclusively defines the rights and/or duties of a party in a dependency proceeding in the juvenile court of this state, such as an order declaring a child or children dependent and an order dismissing a dependency proceeding in toto, is a final order subject to appeal by an aggrieved party.[5] The Court of Appeals' order dismissing appellants' appeal of the juvenile court's order dismissing the Grilz children's dependency proceedings for lack of jurisdiction is vacated. We will now review the merits of that appeal.

## II. APPOINTMENT OF COUNSEL

Two weeks after the juvenile court awarded Mrs. Cavelaris custody of Derek and Margaux with rights of visitation to appellants, appellants and Mr. Grilz moved the court to appoint counsel for the children pursuant to A.R.S. § 8–225(E). They claimed the children needed independent counsel because each prospective custodian's counsel was employed to serve his client's own best interest and not the best interests of the children. That motion, as well as a renewed request for independent counsel made at the judicial review hearing five months later, was denied. *See supra,* at 148. On appeal of the juvenile court's dismissal of the dependency proceed-

ings, appellants contend that the juvenile court's failure to appoint independent counsel for the children requires reversal of the juvenile court order. Appellants urge this Court to direct the juvenile court to appoint independent counsel for the children and order a rehearing and reconsideration of the previous custody and visitation order. We find that the juvenile court should have appointed counsel to represent the children but we will not reinstate proceedings in the Yavapai County Juvenile Court for reasons discussed in Section III.

A.R.S. § 8–225(A) provides that "[i]n all proceedings conducted pursuant to [Title 8] and the Rules of Procedure for the Juvenile Court, a child has the right to be represented by counsel." It does not require *independent* counsel in all such proceedings, and in the sole case in which we have considered § 8–225(A), we held only that the juvenile there was entitled to independent counsel because her interests had not been represented. *Klahr v. Court of Appeals,* 134 Ariz. 67, 654 P.2d 1 (1982). We did not consider, in *Klahr,* when due process requires that independent counsel be appointed, a question which we need to address here. As this is a question of first impression in this state, we draw upon decisions of our sister states.

In *In re D,* 24 Or.App. 601, 547 P.2d 175, *cert. denied sub. nom. C. v. F.F. and David C.,* 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976), D was placed by court order in the home of his maternal grandparents after D's father murdered D's mother. At no time during the proceedings to terminate D's father's parental rights, or during the adoption proceedings instituted by the grandparents, was counsel appointed for D. Faced with the question of

---

5. We note that Ariz.R.P.Juv.Ct. 24(a) permits only an aggrieved party to appeal from a final order of the juvenile court. Under the circumstances of this case, no one was "aggrieved" by the order declaring the Grilz children dependent. The predetermination custodians, Mr. & Mrs. Grilz, were not aggrieved. Mr. Grilz was in custody and Mrs. Grilz was deceased—clearly neither was in a position to care for the children. Other interested parties, including appel-

lants, were not aggrieved by the order. Indeed, they desired it as it was the first step in their quest to gain custody over the Grilz children. Even the related custody order to the DES was unopposed as a further decision by the court was anticipated as to permanent custody after home studies were made. Appellants were aggrieved for the first time by the order dismissing the dependency proceeding.

whether a child has a constitutional right to independent legal representation, the Oregon Court of Appeals held:

> "we are now satisfied that due process does not, in fact, require the presence of independent counsel in every case and that the implementation of a rule to that effect will, in many cases, fail to enhance the protection of the interests of children while unnecessarily complicating proceedings already involving difficult and complicated issues."

*Id.* at 607, 547 P.2d at 179. Recognizing further that the " 'due process' to which a child is entitled is not enhanced * * * where 'independent' counsel does not—and cannot—serve an identifiable purpose," *id.* at 609–10, 547 P.2d at 181, such as "(1) by serving as an advocate for a position taken by his 'client' relative to the issues involved, and (2) by ensuring that the record upon which the court must rely in exercising its discretion is as complete and accurate as possible", *id.* at 609, 547 P.2d at 180, the court adopted a "flexible approach which permits the trial court to determine on a case-by-case basis whether separate counsel for the child is required in any given termination or adoption proceeding." *Id.* at 610, 547 P.2d at 181.

In *In re Guardianship of Gullette*, 173 Mont. 132, 566 P.2d 396 (1977), the Montana Supreme Court addressed the question of whether the trial court abused its discretion by appointing counsel to protect the rights, under the Montana Constitution, of two minor children. Acknowledging the Oregon court's conclusion in *Matter of D, supra,* the Montana court held that "where custody is in serious dispute, the court shall appoint independent counsel for the child or make a finding stating the reasons that such appointment was unnecessary." *Gullette, supra,* at 140, 566 P.2d at 400.

■ We agree that due process does not require independent counsel for children in each and every case in which they are involved. We hold today that the trial court shall appoint independent counsel, upon request of an interested party or *sua sponte*, where such counsel would contribute to promoting the child's best interest by serving an identifiable purpose such as advocating the child's position in the dispute or ensuring that the record be as complete and accurate as possible, or it shall state why such appointment is unnecessary. This standard is in accord with, and indeed advances, the concerns underlying § 8–225(E) as it ensures that independent counsel will be appointed where there are conflicts of interest such that a child's best interests are not fully explored, advocated, or included in the record.

■ The question, therefore, is whether independent counsel should have been appointed in the instant case. Though the children were too immature to have formed a position on what custodial arrangement would serve their best interests, independent counsel could have ensured that the record before the court contained more than reasons why each of the prospective custodians should be granted custody of the children. Independent counsel could have explored alternative placements and ensured that the claims of Mrs. Cavelaris and the appellants, made to bolster their own interests in gaining custody, were accurate. The juvenile court apparently assumed that the children's interests would be served by being placed with either Mrs. Cavelaris or the appellants, and that the attorney for one or the other party would fully represent the interests of Derek and Margaux. This assumption was improper. An attorney representing a party seeking custody could not, for example, represent the interests of the children if there were deficiencies in the home of his client. He or she would be in conflict as between the two. If the attorney advanced the interest of the children by pointing out the deficiencies, he or she would violate the duty of zealous representation. Ariz.R.S.Ct. 29(a); Code of Professional Responsibility, DR 7–101. The juvenile court erred in failing to appoint independent counsel for Derek and Margaux in the dependency proceedings.

## III. RELIEF

■ Having found that the trial court erred in failing to appoint counsel for Derek and Margaux, we must determine what relief, if any, is appropriate given the current posture of the case. Appellants would have us reinstate proceedings in the Yavapai County Juvenile Court and order a rehearing and reconsideration of the court's prior custody orders. We decline to do so.

The juvenile court dismissed the dependency proceedings on April 25, 1983, shortly after Mrs. Cavelaris was appointed the children's guardian in California. The juvenile court had, on October 1, 1982, given Mrs. Cavelaris permission to bring guardianship proceedings in California. At that time, the children were living with Mrs. Cavelaris in California pursuant to the juvenile court's order of April 16, 1981 placing the children in her custody. Though we do not condone the Yavapai County Juvenile Court's decision granting Mrs. Caveleris' request that she be permitted to bring guardianship proceedings in California rather than conducting such proceedings in Yavapai County, we recognize the statutory authority for that decision, *see* A.R.S. § 14–5205 ("The venue for guardianship proceedings for a minor is in the place where the minor resides or is present."), and note that Mrs. Caveleris might have been permitted to bring those proceedings in California without the Yavapai County Juvenile Court's permission. *See* Cal.Prob. Code § 2202(a)(1) (West 1981) ("The proper county for the commencement of a proceeding for the guardianship * * * of a nonresident of this state [includes] * * * the county in which the proposed ward * * * is temporarily living.") Once Mrs. Cavelaris was appointed guardian, the juvenile court could properly have found that the children were no longer dependent and properly dismissed the dependency proceeding. Though it is possible, had independent counsel been appointed, that Mrs. Cavelaris would not have been awarded custody of the children, the children would not have been present in California, guardianship

proceedings could not have been commenced there, and the dependency proceedings in Yavapai County would not have been dismissed, we have been shown no reason to regard this train of conjecture as anything more than that. Appellants' have failed to point to any specific facts to support such conjecture. We will not reinstate proceedings in this case based on speculation for three reasons.

First, the Yavapai County Juvenile Court specifically authorized commencement of guardianship proceedings in California. As noted in *In re Maricopa County Juvenile Action No. A–27789*, 140 Ariz. 7, 680 P.2d 143 (1984), subsequent to her appointment as guardian of the children in California, Mrs. Cavelaris and her husband filed a petition in California to adopt them. As we have not been advised otherwise, we believe adoption proceedings are pending and we are reluctant to interfere with them absent a sound reason to do so. *Cf.*, A.R.S. § 8–406(A) ("A court of this state shall not exercise its jurisdiction under [the Uniform Child Custody Jurisdiction Act] if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.").

Second, we have been shown no facts that indicate that the children's best interests would be served by reinstating proceedings in Yavapai County. As the children have been living in California pursuant to an order of the Yavapai County Juvenile Court for almost three years, the courts of California are likely to be in as good a position as the courts of this state to determine what would be in the children's best interests.

Finally, the Collinses have not been denied the opportunity to gain custody of the children. They are, to the best of our belief, actively opposing Mrs. Cavelaris'

adoption proceeding in California and are themselves seeking adoption of the children in Maricopa County, Arizona, *see Maricopa County Action No. A–27789, supra.* Though it may be less convenient or more costly for them to wage their war in California and Arizona rather than in Arizona only, we believe the unusual circumstances of this case warrant this result.

The order of the Court of Appeals is vacated. Though the trial court erred in failing to appoint independent counsel for the Grilz children, its action dismissing the dependency proceedings will not be disturbed.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.