NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ARMIDA E., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.E., *Appellees*.

No. 1 CA-JV 16-0034
FILED 7-14-2016

Appeal from the Superior Court in Maricopa County
No. JD15511
The Honorable Sally S. Duncan, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Kenton D. Jones joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**        Armida E. ("Mother") appeals the juvenile court's order severing her parental rights to her daughter B.E., contending the juvenile court erred in finding the Department of Child Safety ("DCS")[1] had proven the severance was in B.E.'s best interest, and in denying her request to appoint additional counsel for B.E.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        In 2014, B.E. and three of her siblings came into the care of DCS after repeated reports of Mother's neglect and abuse.  Approximately three months later, the children were found dependent as to Mother.[2]

**¶3**        DCS offered Mother an array of services and assistance geared toward reunification.  Mother failed to meaningfully participate in the services.  She sporadically showed up for drug testing and often tested positive for alcohol.  Her substance abuse and mental health services were discontinued due to lack of participation and inappropriate behaviors in group sessions.  Mother's visitation services were also closed due to minimal participation and lack of contact. After a psychological evaluation, Dr. DeSoto, a psychologist for DCS, opined Mother was incapable of

---

[1]        At the outset of these proceedings, the children were taken into care by Child Protective Services ("CPS"), formerly a division of the Arizona Department of Economic Security ("ADES").  In May 2014, however, CPS was removed as an entity within ADES and replaced by DCS, an entity outside of ADES.  *See* 2014 Ariz. Sess. Laws, ch. 1, §§ 6, 20, 54 (2d Spec. Sess.).  Accordingly, DCS was substituted for ADES in this matter, *see* ARCAP 27, and references to DCS in this decision encompass both ADES and CPS.

[2]        B.E.'s father and siblings are not parties to this appeal.

exercising proper and effective parental control and would unlikely be able to remedy the situation in the near future.

**¶4** In September 2015, B.E.'s guardian *ad litem*, attorney Sara J. Smith, moved to sever Mother's parental rights to B.E. based on nine-month out-of-home placement under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(a), and fifteen-month out-of-home placement under A.R.S. § 8-533(B)(8)(c).[3] At the severance hearing, Mother's attorney informed the court that, during a recess, Mother's son R.E. told Mother "[B.E.] told me [severance and adoption is] not what she wants," and asked the court to appoint an attorney for B.E. The court ultimately denied the request, finding such appointment was not required by law, and continued with the hearing. At the end of the hearing, the court found DCS had met its burden of proving the statutory grounds by clear and convincing evidence and that severance was in B.E.'s best interest, and ordered the severance.

**¶5** Mother timely appealed.[4] We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

**¶6** We review the juvenile court's order severing a parent's rights for an abuse of discretion. *Frank R. v. Mother Goose Adoptions*, 239 Ariz. 184, 190, ¶ 21, 367 P.3d 88, 94 (App. 2016). Parents' rights in the care, custody, and management of their children are fundamental, but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005). A court may sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance, and finds by a preponderance of the evidence that severance is in the best interests of the children. A.R.S. §§ 8-533(B), -537(B); *Kent K.*, 210 Ariz. at 281-82, 288, ¶¶ 7, 41, 110 P.3d at 1015-

---

[3] Absent material changes after the relevant date, we cite a statute's current version. The guardian *ad litem* alleged another ground for severance based on Mother's substance abuse and mental illness, but withdrew it before the severance hearing.

[4] Mother filed her notice of appeal after the court announced its severance order but before it filed the signed order. Such an appeal is treated as filed on the date of, and after, the entry of the severance order and, accordingly, is not premature. *See* ARCAP 9(c) (treating a notice of appeal filed after the announcement, but before the entry, of a judgment as filed on the date of, and after, the entry of the judgment).

16, 1022. Mother does not contest the juvenile court's findings on statutory grounds and, accordingly, has waived any argument in that regard on appeal. *See Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App. 2000) (stating this court deems issues not clearly raised in appellate briefs waived). On appeal, we affirm the juvenile court's factual findings if supported by reasonable evidence. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93-94, ¶ 4, 210 P.3d 1263, 1264-65 (App. 2009); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12, 53 P.3d 203, 207 (App. 2002).

  I.  *Best Interest*

**¶7**  Mother argues the juvenile court erred in finding DCS had proven severing her parental rights to B.E. was in B.E.'s best interest. In proving best interest, DCS must show that severance either affirmatively benefits the child because the child is adoptable or more stable in an existing placement, or eliminates a detriment to the child if the relationship between the parent and the child were allowed to continue. *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6-7, 804 P.2d 730, 735-36 (1990); *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6, 100 P.3d 943, 945 (App. 2004).

**¶8**  Reasonable evidence in the record supports the juvenile court's finding that severance was in B.E.'s best interest. Her academic performance at school has improved, and she is doing well at her grade level; she is now receiving regular medical and dental care, and is current with her immunizations; and, by all accounts, B.E. has been happier and has achieved stability in her current placement.[5] Further, B.E. is adoptable. Severance would make her eligible for adoption and allow DCS to locate an adoptive placement, and thus permanency could be provided. In contrast, continuation of the parental relationship would be detrimental to B.E. as she would remain at significant risk for abuse and neglect, lack permanency, and continue to have attachment issues. All the evidence demonstrates both affirmative benefits from severance and the elimination of potential detriments in continuation of the parental relationship. *See JS-500274*, 167 Ariz. at 6, 804 P.2d at 735 (recognizing that the existence of an

---

[5]  The evidence at the severance hearing indicated B.E.'s two older siblings, who resided at the same group home placement, bullied her and interfered with the parenting of B.E. at the placement. The juvenile court ordered DCS transfer B.E. to a different placement that would provide stability and continuity in her current school and eliminate sibling interference.

adoptive plan or being freed from an abusive parent shows a benefit resulting from severance).

¶9        Mother contends severing her relationship with B.E. would not be in B.E.'s best interest because Mother and B.E. had a loving relationship.  Although B.E. has affection for Mother, evidence in the record demonstrates Mother has not reciprocated the affection.  For example, Mother was repeatedly reported as neglecting and abusing the children and told the children, "come find me when you turn 18," upon their removal by DCS.  Moreover, the existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests.  *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30, 312 P.3d 861, 867 (App. 2013).  Even in the face of such a bond, the juvenile court is required to evaluate the totality of circumstances and determine whether severance is in the best interests of the children.  *Id.* at 351-52, ¶ 31, 312 P.3d at 867-68.

¶10        Mother further contests the best interest finding on the basis that, at the time of the hearing, DCS did not have an adoptive plan for B.E., and that B.E. indicated she wanted a home and did not exclude having a home with Mother.  Mother, however, does not deny B.E. is adoptable, and it is well established that adoptable status is enough of an objective benefit to legally support the "best interest" prong of the severance statute.  *See Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994) (stating the government need not show an adoption plan existed, but instead must show the child is adoptable).  Moreover, even without an adoptive placement waiting, the evidence in the record demonstrates B.E. has improved and achieved stability in the current placement, which also supports the juvenile court's best-interest finding.  *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998) (stating one factor favoring severance is whether the current placement is meeting the needs of the child).

¶11        In addition, Mother did not contest any of the statutory grounds for severance.  The presence of conceded statutory grounds for severance may also negatively affect the child and support the best interest analysis and finding.  *Bennigno R.*, 233 Ariz. at 350, ¶ 23, 312 P.3d at 866.  All of the above factors demonstrate the benefits of severance or the detriment of a continued parental relationship, and more than adequately support the conclusion that reasonable evidence supports the juvenile court's finding of best interest.  Accordingly, the juvenile court properly found DCS had proven severance was in B.E.'s best interest.

## II. Appointment of Counsel

**¶12** Mother also argues the juvenile court erred in denying her request to appoint additional counsel for B.E. during the severance hearing. As an interested party, Mother may request appointment of counsel for B.E. *See Yavapai Cty. Juv. Action No. J-8545*, 140 Ariz. 10, 16, 680 P.2d 146, 152 (1984) (allowing interested parties to request counsel for a child); *cf. Pima Cty. Juv. Severance Action No. S-113432*, 178 Ariz. 288, 291, 872 P.2d 1240, 1243 (App. 1993) (stating a parent does not have standing to assert the conflicts of interest among his children because a party may not interfere with the attorney-client relationship of his opponent). In *J-8545*, the juvenile court found two children were dependent as to their father, and granted temporary custody to the maternal grandmother and visitation rights to the paternal aunt and uncle. *J-8545*, 140 Ariz. at 12, 680 P.2d at 148. At the placement hearing for the children, all interested parties, except the children, were represented by counsel. *Id.* The father and the paternal aunt and uncle moved to appoint counsel for the children, arguing the prospective custodians' counsel represented their own clients' best interests, rather than the children's best interests. *Id.* The court denied the request. *Id.* Our supreme court held the juvenile court "shall appoint independent counsel, upon request of an interested party or *sua sponte*, where such counsel would contribute to promoting the child's best interest by serving an identifiable purpose such as advocating the child's position in the dispute or ensuring that the record be as complete and accurate as possible, or it shall state why such appointment is unnecessary." *Id.* at 16, 680 P.2d at 152.

**¶13** Mother contends that, under *J-8545*, the juvenile court should have appointed counsel for B.E. or otherwise stated a reason why it found counsel unnecessary. *J-8545* is, however, distinguishable from the present case. The children in *J-8545* were not represented by counsel or an appointed guardian *ad litem*, and their interest was simply not represented. *Id.* at 12, 16, 680 P.2d at 148, 152. Here, B.E. was appointed an attorney as guardian *ad litem*. That lawyer was present, and represented and advanced B.E.'s best interest throughout the case and during the severance hearing.

**¶14** This distinction is important for two reasons. First, the statutory responsibilities for an attorney and a guardian *ad litem* are nearly identical under Arizona Rules of Procedures for the Juvenile Court. *See* Ariz. R.P. Juv. Ct. 40 (describing the responsibilities for counsel and a guardian *ad litem* using the collective noun of "attorneys and guardians *ad litem*"). Second, the holding in *J-8545* on appointing counsel for a child in dependency or severance proceedings is to "ensure[] that independent

counsel will be appointed where there are conflicts of interest such that [the] child's best interests are not fully explored, advocated, or included in the record." *J-8545*, 140 Ariz. at 16, 680 P.2d at 152. In the present case, the guardian *ad litem* filed the severance petition on behalf of B.E., and continued to represent B.E. throughout all of the relevant proceedings. As B.E.'s appointed representative, Ms. Smith, objected on behalf of B.E. to Mother's request for appointment of additional counsel, and also objected to Mother's related motion to continue the severance hearing. Ms. Smith did not indicate there was any potential conflict of interest that would affect her representation as to B.E.'s best interest nor did she provide the court with any information that would warrant the need for additional or separate counsel. Neither Mother or B.E.'s sibling testified about the purported conversation with B.E. There was no offer of proof, only a bald statement by Mother's counsel, and the court was well within its discretion in concluding that, absent more, this vague, multi-layered hearsay statement was insufficient to trigger any obligation to appoint additional counsel for B.E.

¶15        At times when a child's expressed wishes conflict with the child's best interest, appointment of an individual to serve as counsel or another as a guardian *ad litem* may be appropriate. 5 Ariz. Prac. Juv. Law & Prac. § 3:4 (West 2015). Mother's counsel, however, failed to proffer any evidence showing such conflict, except the multi-layered hearsay by R.E. And, as previously noted, neither R.E. nor Mother provided any testimony on this issue. Finally, there was nothing presented to the juvenile court to suggest Ms. Smith was not adequately representing B.E.'s interest.

¶16        The record in this matter, as developed by DCS and by B.E.'s guardian *ad litem*, provides more than sufficient documentation concerning B.E.'s stated desire for a permanent home, with or without Mother or her siblings, and as to how severance of the parental relationship would be consistent with and advance B.E.'s best interest. Accordingly, the juvenile court did not err in denying Mother's request of additional counsel for B.E.

**CONCLUSION**

¶17 The juvenile court's order severing Mother's parental rights is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA