IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRIONNA J., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.V., *Appellees*.

No. 1 CA-JV 19-0017
FILED 7-9-2019

Appeal from the Superior Court in Maricopa County
No. JD530462
The Honorable Karen L. O'Connor, Judge

**APPEAL DISMISSED; JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

David W. Bell Attorney at Law, Mesa
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

**OPINION**

---

Presiding Judge Paul J. McMurdie delivered the opinion of the Court, in which Chief Judge Peter B. Swann and Judge Diane M. Johnsen joined.

---

**M c M U R D I E**, Judge:

¶1        Brionna J. ("Mother") appeals the juvenile court's order denying her motion to return her child, Anya, to her custody. We conclude we lack appellate jurisdiction of Mother's appeal because we hold that the denial of an Arizona Rule of Procedure for the Juvenile Court ("Rule") 59 motion to return the custody of a child to a parent is not a final and appealable order. We will, however, treat the appeal as a special action, accept jurisdiction but deny relief because, as discussed below, the issue is moot.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        This appeal arises from a dependency action initiated against Mother and Anya's father, Christopher V. ("Father"), in November 2016. When the dependency petition was filed, Mother and Father were living separately and had been involved in a custody battle over Anya. In March 2017, the juvenile court adjudicated Anya dependent, placed Anya in out-of-home care, and established the case plan for both Mother and Father as family reunification. After more than a year of ongoing dependency proceedings, Mother filed a motion requesting the court return Anya to her custody according to Arizona Revised Statutes ("A.R.S.") section 8-861 and Rule 59. Father also filed a Rule 59 motion requesting Anya be returned to his custody.

¶3        The court suggested deciding both parents' Rule 59 motions simultaneously, and the parties agreed. Mother argued that returning Anya to her care was appropriate because Mother had completed all the services provided to her by the Department of Child Safety ("DCS"). To support her argument, Mother presented testimony concerning her successful completion of parent-aide services and contended she had completed therapy services with the Veteran's Administration. In response, DCS, Father, and Anya's guardian *ad litem* argued Father was closer to reunification with Anya than Mother, and, therefore, granting his Rule 59 motion over Mother's was in Anya's best interests. DCS, Father, and Anya's

guardian *ad litem* also expressed concern that while Mother had completed some services, she had not made the behavioral changes necessary to regain custody.

¶4        After the parties presented their arguments, the court opined that "Father [was] a little bit further along than Mother to have reunification with Anya," and granted Father's Rule 59 motion. The court stated that "[b]ecause [it] granted Father's Rule 59 motion, [it was] denying Mother's Rule 59 motion," and explained that, "Father is more ready than Mother to have Anya in his custody." The court then granted Anya's guardian *ad litem*'s request to change physical custody of Anya to Father and subsequently filed a signed minute entry reflecting its orders.

¶5        Mother filed a notice of appeal from the signed minute entry. While this appeal was pending, DCS moved to change the physical custody of Anya back to an out-of-home placement because an incident between Anya and Father caused Anya to feel unsafe in Father's home. The court granted the motion, finding that continuing in-home placement would be contrary to Anya's welfare and that Anya's placement with DCS was consistent with her best interests.

**DISCUSSION**

¶6        Mother argues the juvenile court abused its discretion by denying her Rule 59 motion because it had granted Father's Rule 59 motion. Mother contends the juvenile court could have granted both parents' Rule 59 motions and then made custodial arrangements for the parents and Anya. *See* Ariz. R. Fam. Law P. 5.1(a)(2) ("The juvenile division will hear legal decision-making and parenting time issues until the dependency is dismissed or the juvenile division defers jurisdiction to the family division.").[1] Before we can address the issue raised by Mother, however, we must examine whether we have jurisdiction to decide an appeal from

---

[1]        Mother's and Father's Rule 59 motions, though heard simultaneously, were not competing motions. A parent need not show he or she is closer to reunification than the other parent to succeed on a Rule 59 motion, only that returning the child to his or her custody will "not create a substantial risk of harm to the child's physical, mental or emotional health or safety." If both parents independently meet the Rule 59 burden, the juvenile court has the authority under Arizona Rule Family Law Procedure 5.1(a)(2), to determine "legal decision-making and parenting time issues" for the child.

an order denying a Rule 59 motion. *See Maricopa County Juv. Action No. J-79149*, 25 Ariz. App. 78, 78 (1975) ("Before considering the merits of a juvenile appeal, this Court conducts a preliminary review of the record in order to determine whether or not it has jurisdiction.").

## A. An Order Denying a Parent's Rule 59 Motion is not a Final and Appealable Order.

¶7 "The Court of Appeals is a court of limited jurisdiction and has only jurisdiction specifically given to it by statute." *Francisco F. v. ADES*, 228 Ariz. 379, 381, ¶ 6 (App. 2011) (quoting *Campbell v. Arnold*, 121 Ariz. 370, 371 (1979)). Our jurisdiction over appeals from juvenile court rulings is governed by A.R.S. § 8-235(A), which provides that "[a]ny aggrieved party in any juvenile court proceeding . . . may appeal from a final order of the juvenile court." *See also* Ariz. R.P. Juv. Ct. 103(A) ("Any aggrieved party may appeal from a final order of the juvenile court to the court of appeals.").

¶8 Our supreme court has held that because dependency proceedings implicate the "important and fundamental right to raise one's children," we do not apply a "narrow, technical conception of what constitutes a final order" under A.R.S. § 8-235(A). *Yavapai County Juv. Action No. J-8545*, 140 Ariz. 10, 14 (1984). Instead, we must consider "the practical effect that the . . . order would have on that right," *Maricopa County Juv. Action No. JD-5312*, 178 Ariz. 372, 374 (App. 1994), to decide whether the given order "disposes of an issue such that it conclusively defines the rights and/or duties of a party in a dependency proceeding in the juvenile court of this state," *J-8545*, 140 Ariz. at 15.

¶9 With these principles in mind, we now turn to whether the juvenile court's order denying Mother's Rule 59 motion was a final and appealable order. Rule 59(A) states that:

> At any time after the temporary custody hearing, a parent . . . may file a motion with the court requesting return of the child to the custody of the parent . . . . The court shall set a hearing to determine whether return of the child would create a substantial risk of harm to the child's physical, mental or emotional health or safety.

After the hearing, Rule 59(E) controls the juvenile court's disposition of the motion and provides that the court shall either:

> 1. Return the child to the parent . . . if the court finds, by a preponderance of the evidence, that return of the child would

not create a substantial risk of harm to the child's physical, mental or emotional health or safety; or

2. Affirm prior custody orders; and

3. Set additional hearings as required by law; [and]

\*     \*     \*

6. Make findings and enter any other orders as may be appropriate or required by law.

**¶10** Unlike an order relieving DCS of its obligation to provide reunification services, *see Francisco F.*, 228 Ariz. at 381–82, ¶ 8, an order terminating visitation, *see JD-5312*, 178 Ariz. at 374, or a dependency disposition order, *see Lindsey M. v. ADES*, 212 Ariz. 43, 45, ¶ 8 (App. 2006), an order denying a parent's Rule 59 motion does not define or alter the obligations or rights of a parent subject to the dependency proceedings. It does not, for example, change the child's dependent status, *see J-8545*, 140 Ariz. at 14 (orders determining or reaffirming a child's dependent status are appealable), nor does it have a "substantial impact" on a parent's ability to participate in services, *but see Maricopa County Juv. Action No. JD-500116*, 160 Ariz. 538, 542 (App. 1989) (order changing the placement of the child to another state appealable because of its substantial impact on the appealing parent's ability to maintain contact with the child). The order, which keeps the *status quo* of the dependency, merely reflects a finding that the parent has failed to show, at the time of the hearing, that returning the dependent child to the parent's custody would not create a substantial risk to the child's health or safety. Likewise, nothing about an order denying a Rule 59 motion purports to be conclusive as the parent may refile the motion if cause exists to do so. *See* Ariz. R.P. Juv. Ct. 59(A) (parent may file a motion for return of the child "[a]t *any time* after the temporary custody hearing" (emphasis added)). Thus, an order denying a Rule 59 motion is interlocutory, and therefore not a final and appealable order. *Cf. Gutierrez v. Fox*, 242 Ariz. 259, 264, ¶ 12 (App. 2017) (temporary parenting orders are "merely preparatory to a later proceeding," therefore, they are not appealable and require a party to seek special action relief).

**¶11** Our conclusion is bolstered by the practical ramifications of holding that a parent may appeal an order denying a Rule 59 motion. During the pendency of an appeal, the superior court lacks jurisdiction to issue any orders in the case on appeal that would "legally or practically prevent the appellate court from granting the relief requested on appeal." Ariz. R.P. Juv. Ct. 103(F); *see also Bank of N.Y. Mellon v. Dodev*, 246 Ariz. 1, 7,

¶ 18 (App. 2018) (when an appeal is properly invoked, the superior court cannot issue orders that would defeat or usurp the ability of the appellate court to render a decision); *Castillo v. Indus. Comm'n*, 21 Ariz. App. 465, 467 (1974) ("The principle is well established that an appeal generally divests the trial court of jurisdiction to proceed except in furtherance of the appeal."). Therefore, if a parent could appeal from an order denying a Rule 59 motion, the juvenile court would be unable to order the dependent child returned to the custody of the appealing parent or to make any new determination concerning placement of the child with that parent, lest the appeal be rendered moot. *But cf. Roberto F. v. DCS*, 237 Ariz. 440, 442, ¶¶ 9–13 (2015) (juvenile court not divested of jurisdiction to order adoption pending appeal of the termination-of-rights order in a separate proceeding because "Rule 103(F) applies only to the case on appeal"). Such a result would be contrary to the primary purpose of A.R.S. § 8-861 and Rule 59, which is to "expedit[e] the process of finding permanent placement for children." *Rita J. v. ADES*, 196 Ariz. 512, 515, ¶ 10 (App. 2000). A contrary conclusion would undermine the fundamental right that the expanded concept of a final and appealable order in a juvenile proceeding was designed to protect. *See J-8545*, 140 Ariz. at 14.

**¶12**        For these reasons, we lack appellate jurisdiction over Mother's putative appeal.

**B.    Special Action Review of the Order Denying Mother's Rule 59 Motion is Appropriate, but Mother's Claim has been Rendered Moot.**

**¶13**        Although we lack appellate jurisdiction to decide whether the court erred by denying Mother's Rule 59 motion, we may nevertheless "exercise our discretionary special action jurisdiction under appropriate circumstances, even when the parties have not requested such relief." *Phillips v. Garcia*, 237 Ariz. 407, 410, ¶ 6 (App. 2015); *see also* A.R.S. § 12-120.21(A)(4) (court of appeals has "[j]urisdiction to hear and determine petitions for special actions brought pursuant to the rules of procedure for special actions, without regard to its appellate jurisdiction"). "Special action jurisdiction is proper when a party has no equally plain, speedy, and adequate remedy by appeal." *Phillips*, 237 Ariz. at 409, ¶ 6; Ariz. R.P. Spec. Act. 1(a); *see also Rita J.*, 196 Ariz. at 515, ¶¶ 10–11 (parent has right to seek special action review from juvenile court's ruling after a permanency hearing).

**¶14**        Given the fluid, time-sensitive nature of placement determinations, we find it appropriate to exercise special action jurisdiction

here. There can be little doubt that any remedy Mother might acquire by appeal, were it available to her, "could hardly be characterized as equally plain, speedy, or adequate." *Rita J.*, 196 Ariz. at 515, ¶ 10. Moreover, in deciding whether to accept special action jurisdiction, we must exercise our discretion "in light of the fundamental right at stake" in dependency proceedings. *J-8545*, 140 Ariz. at 14. Thus, we will treat Mother's appeal as a petition for special action and accept jurisdiction.

¶15        However, before we can reach the merits, we must determine whether Anya's return to DCS's custody and a foster-care placement has caused this petition to become moot. "A case is moot when it seeks to determine an abstract question which does not arise upon existing facts or rights." *In re MH 2008-000028*, 221 Ariz. 277, 281, ¶ 13 (App. 2009) (quoting *Contempo-Tempe Mobile Home Owners Ass'n v. Steinert*, 144 Ariz. 227, 229 (App. 1985)).

¶16        On April 13, 2019, while Mother's appeal was pending, DCS substantiated a report of neglect against Father. Shortly thereafter, DCS held a removal team decision-making meeting to determine whether Anya should remain in Father's home. Mother attended the meeting but allegedly became so disruptive that DCS asked her to leave. After the meeting, DCS filed a motion asking the juvenile court to place Anya back in DCS's care. Mother did not object to the motion, and, on May 14, 2019, the court ordered that Anya be placed in out-of-home care. In its order, the juvenile court found that placing Anya into DCS's custody was the "least restrictive" placement available, its ruling was "consistent with [Anya's] best interests," and continuation of Anya in Father's home would be contrary to her welfare. The court also specifically noted that Mother attended the removal team decision-making meeting but was asked to leave.

¶17        The juvenile court's subsequent order awarding temporary custody of Anya to DCS and foster care has rendered Mother's claims of error regarding the original Rule 59 hearing moot. Regardless of what we might say about the court's decision to deny Mother's Rule 59 motion in January 2019, the juvenile court has now made new findings, based on the circumstances as they exist today, that Anya's placement in foster care is the least restrictive placement available and is consistent with her best interests. Implicit within those findings was a determination that placing Anya in foster care was more consistent with Anya's best interests than other placement options, including Mother. *See* A.R.S. § 8-514(B) (DCS must place a child in "the least restrictive type of placement available," giving preference to placement with a parent); *Pima County Severance Action No. S-1607*, 147 Ariz. 237, 238 (1985) ("[T]he juvenile court will be deemed to

have made every finding necessary to support the judgment."). "[T]he juvenile court is obligated to oversee the dependency case, to consider the best interests of the child in every decision, and to 'independently review the decisions and recommendations of [DCS],'" including requests to change custody of the dependent child. *Alexander M. v. Abrams*, 235 Ariz. 104, 107, ¶ 15 (2014) (quoting *Maricopa County Juv. Action No. JD-6236*, 178 Ariz. 449, 452 (App. 1994)).

¶18      This situation only further illustrates why special action review of an order denying a Rule 59 motion is particularly appropriate. Under the circumstances as they currently stand, however, we are compelled to conclude Mother's petition has become moot, and that we must deny relief.

## CONCLUSION

¶19      For the foregoing reasons, we conclude we lack appellate jurisdiction of Mother's appeal, accept special action jurisdiction but deny relief.



AMY M. WOOD • Clerk of the Court
FILED:  AA