NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VANESSA T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.G, A.T, M.T, J.T, J.T., *Appellees*.

Nos. 1 CA-JV 14-0319 and 1 CA-JV 14-0340
Consolidated
FILED 6-16-2015

Appeal from the Superior Court in Maricopa County
No. JD506680
The Honorable Brian K. Ishikawa, Judge *Retired*

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez, David C. Lieb
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Patricia A. Orozco joined.

**C A T T A N I**, Judge:

¶1        Vanessa T. ("Mother") appeals from the superior court's order terminating her visitation rights prior to the conclusion of a pending severance proceeding involving her five children, C.G., A.T., M.T., J.C.T., and J.T.[1]  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        The children were taken into temporary custody in January 2014 after Mother tested positive for methamphetamine at J.T.'s birth.  The superior court found the children dependent as to Mother.  The Department of Child Safety ("DCS") provided reunification services for Mother, including random drug testing and treatment as well as visitation with the children for two hours twice weekly.

¶3        In April 2014, DCS reported that Mother was not complying with reunification services or with visitation requirements.  Specifically, Mother was not consistent with visits and she discussed the status of the case with the children, even though she had been instructed not to do so.  The court reduced visitation to a single two-hour period each week, with an additional condition that Mother call to confirm her attendance 24 hours before the visit.  Mother's visitation pattern remained inconsistent, however, and she missed five visits in May and June.  As a result of this inconsistency, DCS required Mother to "double call" to confirm her attendance: a first call 24 hours before the scheduled visit and a second on the morning of the visit.

¶4        At the September 2014 report and review hearing, both DCS and the children's guardian ad litem ("GAL") asked the court to terminate visitation.  The GAL noted Mother's inconsistent attendance at scheduled visits and that the children were experiencing trauma resulting from the visits.  The GAL further noted that Mother had failed to comply with

---

[1]        The children's fathers are not parties to this appeal.

substance abuse testing requirements. DCS's counsel read into the record portions of an appointed therapist's recommendation against continued visitation if Mother was not consistent for 30 days and if Mother did not refrain from discussing with the children the dependency case or when they would be returning home. Mother opposed the recommendation that visitation be terminated, but she did not dispute the information in the therapist's report.

¶5        The court found that Mother's continued methamphetamine use and her inconsistent attendance at scheduled visits had endangered the children. The court nevertheless did not terminate Mother's visitation rights at that time, but told Mother that if she were "even one minute late" or failed to appear for a visit, her visitation rights would be terminated. The court also changed the case plan to severance and adoption.

¶6        At a report and review hearing in October 2014, DCS notified the court that Mother was 25 minutes late for her most recent scheduled visitation. Mother asserted that she had been only three minutes late because the parent aide had agreed to start the visitation at a later time. The court terminated Mother's visitation rights, noting its prior admonitions and finding that further visitation with Mother "would endanger the children because of the inconsistency" and it "would endanger and be detrimental to the children's well being."

¶7        Mother filed a motion to reconsider and requested an evidentiary hearing on endangerment, arguing that the record did not provide sufficient evidentiary support for an endangerment finding and that the court therefore lacked grounds to terminate visitation. The court summarily denied Mother's requests.

¶8        Mother timely appealed the superior court's order terminating her visitation rights and an order denying her motion to reconsider. Because the order terminating Mother's visitation rights is a final, appealable order, *see Francisco F. v. Ariz. Dep't of Econ. Sec.*, 228 Ariz. 379, 381, ¶ 8, 266 P.3d 1075, 1077 (App. 2011) (citing *Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. 372, 374–75, 873 P.2d 710, 712–13 (App. 1994)), we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 8-235.[2]

---

[2]        Absent material revisions after the relevant date, we cite a statute's current version.

**DISCUSSION**

**¶9** Mother argues the superior court erred by terminating her visitation rights with the children without sufficient evidence to support a finding of endangerment.

**¶10** We review an order terminating visitation for an abuse of discretion and will affirm if the order is supported by sufficient evidence. *JD-5312*, 178 Ariz. at 375–76, 873 P.2d at 713–14. The superior court has broad discretion relating to parental visitation and should consider whether "visitation would endanger seriously the child's physical, mental, moral or emotional health." *Id.* The court should deny visitation only under extraordinary circumstances and only if visitation is endangering the child. *See id.*; *see also Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 200, ¶ 9, 42 P.3d 1163, 1165 (App. 2002).

**¶11** Mother argues that the court's endangerment finding lacked any evidentiary support because the therapist's report, which recommended against further visitation, was not offered or admitted into evidence. Under Rule 58(E)(2) of the Arizona Rules of Procedure for the Juvenile Court, "[a]ll documents which the parties wish the court to consider as evidence shall be marked and admitted prior to the conclusion of the hearing." However, "[a]bsent any objection by a party, the court may consider the oral or written reports of the parties, documents previously entered into evidence at prior proceedings, documents agreed upon by the parties and any other reports, pursuant to Rule 45." Ariz. R.P. Juv. Ct. 58(E)(1).

**¶12** Here, DCS's counsel informed the court of the therapist's recommendation and read into the record a portion of the report stating that "[t]herapist suggests that visits be . . . reconsidered if Mother is not consistent for at least 30 days." Mother did not dispute receiving the therapist's report and did not object to the court's consideration of its content at the hearing. By failing to object, Mother waived her current argument regarding the report's admissibility. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21, 153 P.3d 1074, 1081 (App. 2007).

**¶13** Waiver notwithstanding, reasonable evidence in addition to the therapist's report supports the superior court's endangerment finding and the resulting order terminating visitation. J.C.T.'s foster parents reported he "had a lot of setbacks, just from the last two visits from the inconsistency." A.T. and M.T.'s foster parents reported that the two children "[suffered from] emotional issues when visits have been

cancelled" and had started "withdrawing and being sad" following visits. The foster parents also reported that A.T. and M.T. struggled with behavioral issues following visits with Mother, including "aggressive behavior" and "sobbing." C.G.'s placement reported that C.G. had been exhibiting "sadness" at home and at school resulting from the visits.

¶14 Mother was adequately informed that her inconsistency in attending visits with the children was harming them and that future visitation was contingent upon her compliance with the "double call" procedure and timely arrival. Mother nevertheless missed multiple visits, and despite clear admonitions from the court, Mother did not arrive on time for her last scheduled visitation. Substantial evidence showed that the children suffered adverse emotional and behavioral consequences stemming both from time spent with Mother and from Mother's inconsistency in attending visits. Given Mother's continued drug abuse and the evidence of harm to the children, the record supports the superior court's endangerment finding and its conclusion that terminating visitation was in the children's best interests. *See Michael M.*, 202 Ariz. at 201, ¶ 11–12, 42 P.3d at 1163.

**CONCLUSION**

¶15 We affirm the termination of Mother's visitation rights.



Ruth A. Willingham · Clerk of the Court
FILED: ama