NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

EDGAR G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.R., E.R., *Appellees*.

No. 1 CA-JV 22-0057
FILED 9-27-2022

Appeal from the Court in Yuma County
No. S1400JD20210343
S1400JD20210344

The Honorable Stephen J. Rouff, Judge *pro tempore*

**AFFIRMED**

COUNSEL

Law Office of Elizabeth M. Hale, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1        Edgar G. ("Father") appeals from the juvenile court's order finding children Jenny and Jackie[1] dependent as to Father. Father argues the juvenile court erred by denying his motion to set aside the dependency finding. Father also claims the court violated his due process rights by denying his request for new counsel at the hearing on his motion. We conclude we lack jurisdiction to review Father's claims. We also hold sufficient evidence supports the court's dependency judgment. Because the trial court did not abuse its discretion by adjudicating the children dependent, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        The Department of Child Safety ("DCS") filed a dependency petition alleging Jenny and Jackie were "dependent due to abuse and/or neglect" as to Father. DCS alleged that Father was "unwilling or unable to provide proper and effective parental care and control" by 1) failing to provide a stable home environment with supervision and 2) exposing the children to domestic violence. DCS offered evidence of at least three domestic violence incidents between Father and the children's mother ("Mother") in late 2020 and January 2021.

¶3        In January 2021, a DCS report stated that Father stabbed Mother in the presence of one of the children. Mother sought an order of protection, but she later requested that the order and criminal charges be dismissed.

¶4        DCS's report to the juvenile court provided Father might have physically and sexually abused another child. DCS also observed that one of Father's children appeared to not be regularly eating, and both children were congested and past due for several routine vaccinations. DCS found

---

[1]        We use pseudonyms to protect the children's identities.

Father "unwilling or unable to . . . meet the [the children's] needs for food, clothing, shelter, and/or medical or mental health care." DCS could not assess Father's home because he never confirmed his address and made statements such as "I sometimes stay here" or "I stop by sometimes."

**¶5**      Mother is missing. DCS provided evidence that Father is a person of interest in her disappearance. Border documentation shows Father entered and exited Mexico on December 17, 2021. And on December 20, 2021, a body presumed to be Mother was found at Father's family home in Mexico.

**¶6**      On December 30, 2021, the court held a preliminary protective hearing and admitted DCS's report into evidence. Father denied the allegations in the dependency petition. The court scheduled a pretrial conference for February 24, 2022. Father signed a form agreeing to the date and time of the conference.

**¶7**      On February 24, 2022, the bailiff called the case at the scheduled pretrial conference time but received no response. The bailiff could not find Father after looking outside the courtroom and in the lobby. The court found Father's absence "a concession to the allegations in the dependency petition." Given DCS's previously admitted evidence in the dependency report and Father's absence at the pretrial conference, the court found DCS satisfied its burden to prove the children were dependent concerning Father. The court issued a minute entry memorializing these findings on March 1, 2022.

**¶8**      On February 28, Father sent a letter to the court titled "Motion for reconsideration," in which he requested a new hearing. He claimed he had been in the lobby at the time of the conference but did not hear the bailiff call the case. On March 2, Father also filed a notice of appeal from the juvenile court's February 24 unsigned dependency findings. On March 3, Father moved to set aside the unsigned dependency order, claiming that default was not warranted because he was present in the courthouse at the scheduled time.

**¶9**      On March 11, this court stayed Father's appeal from the unsigned dependency order so the juvenile court could enter a final judgment. This court granted Father 15 days from the entry of the juvenile court's signed order to file a new notice of appeal.

**¶10**      The juvenile court filed a signed dependency order on March 21. The court found by a preponderance of the evidence that Father's failure to appear at the pretrial conference was without good cause, and the

children were dependent as to Father. Father's failure to provide a stable home and supervision, history of domestic violence, and status as a person of interest in Mother's disappearance supported the court's decision.

¶11 Meanwhile, on March 25, the juvenile court held a status hearing to consider Father's motion to set aside the judgment. The parties argued whether Father failed to appear at the conference on February 24 because of excusable neglect and if Father had a meritorious defense to the dependency petition's allegations. Father argued the juvenile case was "fraudulent" because the criminal case had been dismissed. The court found that Father lacked a meritorious defense and denied Father's motion.

¶12 Also at the hearing, Father asked the court to appoint new counsel because his lawyer did not inform him that he had the right to appeal the dependency order and there had been a "breakup between client communication." The court responded, "[I]t wouldn't have made any difference in your lawyer to file it because there wasn't any final order to appeal." On March 29, 2022, Father sent the court a letter titled "Motion for Change of Coun[se]l" requesting that he be appointed new counsel. Because Father did not copy all parties on the matter, the court declined to consider it.

¶13 The court issued an order from the March 25 hearing on April 13. Father did not appeal from this order.

¶14 We have jurisdiction to review the dependency order under A.R.S. §§ 8-235(A) and 12-120.21(A)(1). We do not, however, have jurisdiction to review the court's resolution of the motion to set aside presented at the March 25 hearing.

## DISCUSSION

¶15 Father argues that 1) the court erred by denying his motion to vacate the entry of default during the March 25 hearing, and 2) the court violated his due process rights when it did not appoint him new counsel upon his request at the hearing.

¶16 This court lacks jurisdiction to consider Father's claims. "Before considering the merits of a juvenile appeal, this Court conducts a preliminary review of the record in order to determine whether or not it has jurisdiction." *In re Appeal in Maricopa County Juv. Action No. J-79149*, 25 Ariz. App. 78, 78 (1975). This court can only exercise the jurisdiction given to it by statute. *Francisco F. v. Ariz. Dep't Econ. Sec.*, 228 Ariz. 379, 381, ¶ 6 (App. 2011).

**¶17**　　　　Arizona Revised Statutes Section 8-235 dictates this court's jurisdiction over appeals from juvenile court rulings. "Any aggrieved party in any juvenile court proceeding under this title may appeal from a final order of the juvenile court to the court of appeals in the manner provided in the Arizona rules of procedure for the juvenile court." A.R.S. § 8-235(A); *see also* Ariz. R.P. Juv. Ct. 103(A) ("Any aggrieved party may appeal from a final order of the juvenile court to the court of appeals.") (repealed July 1, 2022); Ariz. R.P. Juv. Ct. 104(B) ("The notice of appeal . . . shall . . . designate the final order or part thereof appealed from.") (repealed July 1, 2022).

**¶18**　　　　This court "only acquires jurisdiction over those matters identified in a timely filed notice of appeal." *In re Marriage of Thorn*, 235 Ariz. 216, 218, ¶ 5 (App. 2014). When an appellant "file[s] his notice of appeal before the trial court decide[s] his . . . motion, and he [does] not file another notice of appeal after the trial court issue[s] its decision," the court lacks jurisdiction to decide claims from the motion. *Navajo Nation v. MacDonald*, 180 Ariz. 539, 547 (App. 1994).

**¶19**　　　　On appeal, Father argues two issues over which we do not have jurisdiction. First, Father argues that at the hearing, the court should have evaluated Father's defense to the dependency before ruling on the motion. Second, Father argues that the court should have appointed Father new counsel when it learned about the breakdown in communication between Father and his attorney. But Father never appealed the order from this hearing. Instead, Father appealed from the order adjudicating dependency issued on March 21. Because Father did not identify the court's denial of his motion in his April 1 appeal, this court has no jurisdiction to review Father's arguments. *See Thorn*, 235 Ariz. at 216, ¶ 5; *Navajo Nation*, 180 Ariz. at 547.

**¶20**　　　　Because Father timely appealed within 15 days of the order adjudicating dependency, we have jurisdiction to review the matter under A.R.S. §§ 8-235(A) and 12-120.21(A)(1). *See In re Appeal in Yavapai County Juv. Action No. J-8545*, 140 Ariz. 10, 15 (1984) ("[A]n order declaring a child or children dependent . . . is a final order subject to appeal by an aggrieved party."). This court reviews an order adjudicating a child dependent for abuse of discretion. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016). This court will defer to the juvenile court's findings unless no reasonable evidence supports them. *Id.* "The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011).

**¶21** A "[d]ependent child" is one "[i]n need of proper and effective parental care and control and who has no parent . . . willing to exercise or capable of exercising such care or control" or a child who is adjudicated to be "[a] child whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child." A.R.S. § 8-201(15)(a)(i), (iii). The court must find by a preponderance of the evidence that the allegations in the dependency petition are true. A.R.S. § 8-844(C)(1).

**¶22** There is sufficient evidence to support the court's dependency findings. Father does not challenge the juvenile court's findings that the children were dependent because Father failed to provide them a stable and safe home, participated in multiple domestic violence incidents, and was a person of interest in Mother's disappearance. If an appellant does not challenge a trial court's findings on appeal, the appellant concedes the accuracy of those findings. *Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960).

**¶23** Although Yuma County and Mother ultimately dismissed the criminal charges and protective order against Father based on the January 21 incident, the remaining evidence supports the court's order. To support a dependency finding, domestic violence in the home need not be continuous or actively occurring at the time of the dependency hearing so long as there is a "substantiated and unresolved threat." *Shella H.*, 239 Ariz. at 51, ¶ 16. Father is the subject of at least two other domestic violence incidents in late 2020, and Father may have physically and sexually abused another child. This evidence, coupled with the children's health, Mother's mysterious disappearance, and Father's inability to confirm his household address, adequately supports the superior court's dependency findings. *See* A.R.S. § 8-201(15).

**¶24** There is thus reasonable evidence in the record to support the juvenile court's conclusion that the children were dependent as to Father.

**CONCLUSION**

**¶25** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:
JT